USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/28/2021

**DEWEY PEGNO & KRAMARSKY LLP**

777 THIRD AVENUE  NEW YORK, NEW YORK  10017

PHONE: (212) 943-9000  FACSIMILE: (212) 943-4325

WWW.DPKLAW.COM

April 27, 2021

**BY ECF**

Hon. Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 2550
New York, New York 10007

Re: *Music Royalty Consulting, Inc. v. Reservoir Media Management, Inc.*,
Case No. 18 Civ. 9480 (CM) (KNF)

Your Honor:

MEMO ENDORSED

We represent plaintiff Music Royalty Consulting, Inc. ("MRCI") and write to request permission to introduce rebuttal expert testimony, only if necessary, once the Court has ruled on summary judgment and the admissibility of the recent expert submissions from defendant Reservoir Media Management, Inc. ("Reservoir").[1] We understand that Reservoir will oppose this request because it believes the current scheduling order does not allow for rebuttal experts.[2]

MRCI asks for no extension of the existing schedule. MRCI asks only—if this case goes to trial, and if Reservoir is permitted to introduce the testimony of either of its noticed experts—that MRCI then be allowed to introduce rebuttal expert testimony. Reservoir's affirmative expert opinions, consisting of improper legal conclusions that contradict this Court's own rulings and an estimate of previously undisclosed damages that contradicts witness testimony, were unexpected. Any resulting delay to the trial date, which has not yet been set, will be modest. And if the case does not go to trial, or in the (likely) event that the Court excludes some or all of Reservoir's expert submissions, then MRCI will not be forced to spend unnecessary resources on Reservoir's improper attempt to buy a better set of facts with expert opinion.

The current scheduling order called for MRCI to submit expert reports by March 2, 2021, which MRCI opted to forgo because fact discovery has developed a strong basis for MRCI's claim, and for Reservoir to submit expert reports more than a month later, on April 9, 2021.[3] Experts must be deposed by May 6, 2021. The scheduling order does not provide for rebuttal expert discovery by either party. Nor would it have. Implicit in the sequence of expert discovery

---

[1] Notice of Filing of Expert Reports (Apr. 9, 2021), ECF No. 82; Expert Report of Barry M. Massarsky (Apr. 9, 2021) ("Massarsky Report"), ECF No. 82-1; Expert Report of Clark Miller Consulting LLC (Apr. 9, 2021) ("Miller Report"), ECF No. 82-2.

[2] There have been two previous requests to extend the deadline for expert discovery, both of which Your Honor granted. (*See* Joint Letter (Mar. 4, 2020), ECF No. 73; Joint Letter (Aug. 26, 2020), ECF No. 78.)

[3] Revised Scheduling Order (Sept. 14, 2021), ECF No. 80.

---

*Handwritten annotations:*

4/28/2021 — The motion is DENIED. The scheduling order is clear. You deliberately elected not to submit an expert report by 3/2/2021. You are bound by that decision. There is no "rebuttal" on the fly in scheduling order, because I never said what — said — your deadline to identify experts in this old case was 3/2/21.

Hon. Colleen McMahon
April 27, 2021
Page 2 of 4

as scheduled was that Reservoir would not submit *affirmative* expert reports. Had MRCI known that Reservoir intended to do so, MRCI would have insisted on simultaneous submissions.

## Background

MRCI has asserted a claim against Reservoir for breach of a publishing agreement concerning musical compositions by Scott Storch (the "Publishing Agreement"). In 2012, Mr. Storch assigned his rights under the Publishing Agreement to MRCI (the "Assignment"), including the right to receive the "writer's share"—or 50%—of the royalties. Reservoir, in the Court's words, "unambiguously . . . consented in writing to the Assignment, thereby rendering it valid."[4] Since 2015, however, based on a shifting array of excuses, Reservoir has unlawfully refused to pay any "writer's share" to MRCI under the Publishing Agreement.

Discovery has revealed that Reservoir understood from the start that it had a binding obligation to pay royalties to MRCI. Nevertheless, Reservoir tried to avoid that obligation. First, Reservoir claimed the right to recoup hundreds of thousands of dollars in inflated and unsubstantiated attorney fees and expenses against Mr. Storch's "writer's share" and, as its internal documents have revealed, made every effort to keep the Storch account indebted so that little or no funds would be paid to MRCI. Later, at great expense, Reservoir tried to use Mr. Storch's bankruptcy proceedings to have the Assignment declared invalid so that Reservoir could then buy Mr. Storch's "writer's share" off market without competitive bidding. All along Reservoir falsely claimed to the bankruptcy trustee, the bankruptcy courts, and others that it had never consented to the Assignment. One "principle" alone has guided Reservoir's actions: that Reservoir, which has already taken millions of dollars in profits from Mr. Storch's royalties, is entitled to keep all future income from Mr. Storch's share of his past hits.

The material issues left for disposition are (i) Reservoir's primary defense: the legal effect of Storch's 2015 bankruptcy, and the resulting rejection of the Publishing Agreement, on Reservoir's future obligations; (ii) whether MRCI made valid "specific written objections" to certain accountings; and (iii) which remedies are available to MRCI if Reservoir is found liable.

## Reservoir's Expert Submissions

Because fact discovery has been favorable to MRCI, Reservoir has submitted two affirmative expert reports to shore up its case: the Miller Report and the Massarsky Report (together, the "Reports"). Both are improper.

***Miller Report.*** Clark Miller, the author of the Miller Report, is a music industry lawyer who, in the guise of describing "industry custom and practice," improperly offers legal conclusions about the meaning of the Publishing Agreement and related contracts, including the conclusion—already rejected by this Court—that Reservoir never consented to the Assignment.[5]

---

[4] Decision & Order (Apr. 17, 2019) at 21, ECF No. 48.

[5] Miller Report at 3.

Hon. Colleen McMahon
April 27, 2021
Page 3 of 4

Indeed, when MRCI asked Reservoir's fact witnesses about many of the same issues addressed by the Miller Report, Reservoir objected that such questions *called for legal conclusions.*[6]

Mr. Miller opines, too, that MRCI did not object to Reservoir's royalty accounting statements with appropriate specificity[7] By doing so, not only does Mr. Miller again intrude on the Court's prerogative of interpreting the law, but his proposed testimony contradicts that of Reservoir's own fact witnesses. Reservoir's President, who also has many years of experience in music publishing, denied knowing any industry-standard definition of "specific written objection." Rather, he said objections to royalty statements could be made by letter or email and need be only specific enough in context "to identify the problem."[8] Reservoir's Vice President of Royalties and Copyright Administration, whose office prepares all accounting statements and fields inquiries about accountings from Reservoir's royalty payees, testified that "formal letters" objecting to account statements are rare, and instead the process is typically informal—often done by telephone, rather than in writing.[9]

***Massarsky Report.*** Barry Massarsky, the author of the Massarsky Report, is an economist who opines, based in part on Wikipedia research, that Reservoir has incurred $1,344,560 in "lost value" damages because Storch is no longer delivering musical compositions to Reservoir.[10] That number is, perhaps not coincidentally, very close to the writer's share royalties currently owed to MRCI based on unaudited records provided by Reservoir. (Mr. Miller offers the complementary—and improper—legal opinion that these damages are recoverable under the indemnity provisions of the Publishing Agreement, apparently based on the belief that it is standard industry practice for a publisher to seize all royalties for an artist's past work when that artist is no longer able to produce new hits, as eventually happens to all artists.[11])

The Massarsky Report is the first time that Reservoir has claimed any such damages. Reservoir did not identify those damages during fact discovery—either in its initial disclosures or its interrogatory responses.[12] There is no basis in the documents produced by either party to support Mr. Massarsky's claims; indeed, he cites none.[13] In fact, the deposition testimony of Reservoir's fact witnesses showed that, whatever value Mr. Storch had for Reservoir, it was from the money generated by his past hits, not any promise of new ones.

---

[6] *E.g.*, Lafargue Dep. Tr. (Dec. 1, 2020) at 223:2-9 (concerning consent to the Assignment).

[7] Miller Report at 7.

[8] Lafargue Dep. Tr. (Dec. 1, 2020) at 55:23–59:25.

[9] Scott De Perto Tr. (Dec. 21, 2020) at 130:7–131:17.

[10] Massarsky Report ¶¶ 9–10.

[11] Miller Report at 9.

[12] *Compare* Def.'s Initial Disclosures (Dec. 14, 2018) at 6 ("Reservoir . . . does not currently seek damages in this action, but reserves the right to seek damages at a later time . . . ."), *with* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

[13] *See* Massarsky Report at 25 (citing no evidence produced by the parties apart from agreements).

**Legal Standard**

The issues above are far from the only flaws with the Reports, which MRCI will explain in detail at the proper time, but they should affect the Court's consideration of this request.

The Federal Rules of Civil Procedure presume the availability of rebuttal expert discovery. Unless the Court orders otherwise, expert disclosures "intended solely to contradict or rebut evidence on the same subject matter identified by another party" may be made "within 30 days after the other party's disclosure."[14] But where, as here, the Court has entered a scheduling order that does not provide for such rebuttal discovery, then that scheduling order may be modified with the court's consent for good cause shown.[15] Notably, when the need for expert rebuttal becomes known only *after* an opponent's introduction of expert testimony, courts have permitted the introduction of rebuttal evidence even during trial.[16]

Not surprisingly, then, the relevant factors favor MRCI. *First*, the Reports' affirmative expert opinions were unexpected because they concern improper legal opinions, counterfactual premises, and previously undisclosed damages. *Second*, though the Reports are of dubious importance and relevance, for at least the reasons stated above, if the Court concludes otherwise, then MRCI will be disadvantaged at trial if Reservoir presents unrebutted expert testimony. *Third*, if the Court allows Reservoir's expert testimony there will be little prejudice to Reservoir if the Court allows MRCI a reasonable opportunity for rebuttal. *Finally*, trial is not imminent. No date has been set, and the time needed for rebuttal expert discovery will be modest.

\* \* \* \*

For all the foregoing reasons, MRCI respectfully asks that the Court permit MRCI to introduce rebuttal expert testimony, if necessary, after summary judgment and *Daubert* motions concerning Reservoir's affirmative expert opinions. In the alternative, MRCI respectfully asks that the Court permit MRCI to introduce rebuttal expert testimony before the deadline for summary judgment and extend that deadline accordingly. We thank the Court for its attention.

Sincerely,

Anders Pauley

cc: All Counsel of Record (by ECF)

---

[14] Fed. R. Civ. P. 26(a)(2)(D).

[15] *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019) (collecting authorities).

[16] *See, e.g., United States v. Asare*, No. 15 Civ. 3556 (AT), 2019 WL 10854305, at *6 (S.D.N.Y. June 17, 2019).